Our next case is 2017-1247 Hiles v. Shulkin Rachel Elsby for the appellant Marshall Hiles Mr. Hiles is a non-dependent surviving son of the veteran Charles Hiles in this case. Following the veteran's death, Mr. Hiles raised a claim at the VA for benefits based on a due process violation that occurred during the life of the veteran. Specifically, the VA violated the veteran's due process rights by failing to appoint Mr. Hiles as his fiduciary. The question presented here- Did he submit an application to be the fiduciary? Did the veteran submit an application for Mr. Hiles to be the fiduciary? So there were a series of letters that were sent to the VA over the course of almost 12 months. He asked them to recognize his power of attorney, which the regulations in the VA have declined. They don't recognize state power of attorney and that's pretty clear under their rules. Did he submit an application or in fact it would actually be, did the veteran submit an application asking to have him appointed fiduciary duty? So the family certainly submitted several requests to be appointed the fiduciary. There's a letter that was sent March 10th by the veteran to the court or to the VA seeking a change in veterans benefits.  All we have is a letter from the VA recognizing the letter from the veteran that it received. It is our understanding, but again, it is not on the record that that included a request that his son be recognized as personal representative. There's no doubt that from February to September and then actually in the months that follow, Mr. Hiles, who was acting as the veteran's personal representative for all of his health care and for his financial needs, sent multiple requests and also sent a letter documenting that his father was incompetent. They sent the diagnosis from the father's family doctor saying he's incompetent. He's got Alzheimer's. He's got dementia. He's been put in the hospital. It's hard to imagine a scenario under which they could have done more to get the government to recognize him. Then in September of 2006, the VA decided a number of things. Number one, they decided that he was entitled to an increased rating for his disability, but they also decided that evidence has been raised about Mr. Hiles, right? Mr. Hiles' competency. I keep getting the veteran and the son confused. Anyway, Mr. Hiles' competency, and they at that point said they were going to conduct some sort of inquiry into competency because, of course, I wouldn't want anybody appointing somebody my fiduciary and giving them power over my estate if I was not in fact incompetent, right? You wouldn't want to see that happening. They said at that point they're going to conduct a competency evaluation. They conducted it. We all wish it would have gone in a more timely fashion. That is certainly true. From September of 2006 until January 2007, I'm dying to know exactly what they did during that time, what constitutes such a competency evaluation. Hopefully the government will tell me. Do you have any idea what they did during that time? I would say they did nothing. I know. I anticipated that would be your response. I'm hoping that they say they did something other than nothing. But actually they didn't conduct an incompetency finding from or investigation from September to January. Actually, they said in their September, the Tiger Team's September decision, there is a definitive finding of incompetency. They actually found it there. I thought they said there was a proposed finding of incompetency. Based on a definitive diagnosis from the family doctor, I think this is that Appendix 2199. The language was actually, they proposed a determination of incompetency, but the fact So 2208, the VA examiner and the veteran's private... Yes, just a second. Sorry. Here. Okay. 2208, which paragraph are you looking at? It starts Section 9, a finding of incompetency is proposed. Proposed. Okay. And then it says in the second paragraph, the sentence beginning where, sorry, the sentence beginning since, since there is a definitive finding of incompetency by a physician in this case. So basically they had all the facts in front of them by September of 2006, and then just did nothing in the time that followed. And the veteran's family on October 1st immediately sends a letter challenging certain aspects of the Tiger Team's decision. One aspect they did not challenge was the finding of incompetency. And the government has come back and said, well, we had to let a 60 day time period run because the regs require us to give the veteran time to challenge a proposal of incompetency. But at the very least, there was an implicit waiver of that 60 day time period giving everything that had been provided to the VA, including the veteran providing medical records from the doctor that says he's incompetent. There was no way in which the veteran would have challenged it. They should have just moved forward and appointed the fiduciary. So if they let the 60 days roll, then it would have been November of 2006 when a fiduciary should have been appointed, right? That's right. And then that fiduciary would have been eligible to accept receipt of the increased benefits at a minimum that had been awarded as of September 2006. That's right. And so what, what did happen though? They didn't do anything in your view until January 2007. And then what did they do in January? In January of 2007, they sent a letter to the veteran, the veteran's family saying, okay, we have decided you are incompetent and now we need to go through our fiduciary appointment. Where is that letter in this, in this? I think it's 2101. Yeah, 2102 is where they addressed the competency issue and they basically just repeat the same thing that the Tiger team's decision said. So now they would have to go through the process of officially appointing the fiduciary and granted they have their own process. They don't immediately recognize the, the power of attorney, but it's clear that that is the standard sort of paperwork that they would have accepted ultimately and recognized Mr. Hiles as his father's fiduciary. So they come along in January and say, okay, now we've recognized you as incompetent. Where do they say they're, in this letter, do they say they're going to now have a fiduciary appointed or what? I don't see anything about a fiduciary. Am I missing part of the letter or am I missing the statement about a fiduciary somewhere? I'm not actually sure. I'd have to find to see if there's a separate site to that, but that would be, and that's in the, the statements that have been made that the next step in the process, once you have a finding of incompetency is to appoint the fiduciary. I can find you whether there's an exact citation that I believe it comes a little bit further. So if Mr. Hiles had been appointed fiduciary, then he could have received those benefits from September 2006, but I mean, what other money is there really at stake? I mean, there was some, something that looked, I will be honest with you, kind of outrageous that suggested Mr. Hiles thought he was entitled to $600,000 somehow. I don't know what for precisely, but what else would he, what else would the veteran have been entitled to? Because Mr. Hiles Jr., the son, is not technically entitled to anything in terms of accrued benefits once his dad has passed away. So only the fiduciary can receive on behalf of the veteran, because that's what this money is for, on behalf of the veteran or dependent children, which we don't contest his son does not qualify as. Correct? That's correct. So what, what really, what really is at stake in this case? So it would look a lot like what the, an accrued benefits award would be. It would be the money that was awarded through the Tiger Team September decision, which was made retroactive to February. So it's not a large sum of money, but it's a sum of money and it's an issue that's important and it's money that the veteran would have been entitled to had his due process rights not been violated. So I gather that what we're going to hear, do you know what that amount is? It's on the order, I don't have the exact number, but I think it's on the order of $5,000 to $6,000. Okay. Do you, I think I understand from the answers that you gave earlier that the position that you think what the government's going to say, or you understand the government's position to be, that the reason why there was such a delay was just in the event that the evidence of incompetency would have been contested by the veteran himself to give the veteran time to say, no, my child's trying to take my money away from me and it's my money and I am competent. Is that what, is that what the notice function is about, what the timing is about? I understand you're saying that there was no such paper filed in this case, but just, is that the reason why there's a delay in time? Right. And I think it actually uses the word due process in the reg that there's a 60-day window established for somebody who's been, where an incompetency finding has been proposed so they can challenge it in the event that they're not incompetent here. There was really no question about whether incompetency was an issue, but the government has really boiled it down to these two 60-day windows from September to January. But the case is really February 2006 to January 2007. February 2006 is when the family starts making claims to the VA saying, my father has these health problems, it's time critical by the way, that's why a tiger team was appointed because they're there for expedited review when you know a veteran is near end of life. The veteran submitted his own letter in March of 2006, this went on, the family continued to repeatedly send letters over the summer preceding the tiger team's decision. So I think at any point during that period, the VA very easily could have initiated incompetency findings. Instead, it let it go until the tiger team reached its final decision and then we had this. But did the February information that was submitted originally with that claim include allegations of the veteran's incompetency? I thought that kind of arose a little later in the process as the disease progressed. Mr. Hiles sent a letter February 9th of 2006 saying the son, Mr. Hiles, Jr. sent a letter to the VA. He's not technically a junior, so we probably ought not to call him that, they have different first names. The appellant. I get it. Yeah, and with that, he sent the power of attorney and said, look, I'm managing my father's affairs now, he can't manage them. So that was the first notice. But even if that wasn't enough, the veteran sent a letter in March 10th and then the family doctor sent his diagnosis by July of 2006, so now we have a definitive diagnosis. At that point in time, he was put in the hospital for dementia and Alzheimer's, that's recognized in the veteran's court's decision. So we know there's incompetency issues well before September of 2006. So what precisely is your due process argument? Does it include his due process rights, the veteran's due process rights were violated by virtue of a fiduciary not being appointed at an earlier time, or what is the precise nature of your due process argument? The due process argument is a violation of the veteran's due process rights, and it's going from the time period of February 2006 until it would effectively terminate January 2007 because they never completed the process of appointing a fiduciary, and it is the VA's failure to expedite and move quickly in that process, and to essentially have delays throughout to not recognize the correspondence that was sent over the summer, to not move once it even if it had to let that 60 day window expire, it still did absolutely nothing until at least January 17th. Let's save your rebuttal time and let's hear from Mr. Yale. And please the court, we'd first like to address the 60 days that we were talking about before. So September 26th, there's a determination of a proposed incompetency, there's under the regulations, there's a 60 day notice period, and that's really for protection of the veteran. So what do we do with that sentence that says, since there is a definitive finding of incompetency by a physician in this case, and the claimant is not shown to be able to manage personal affairs to include disbursement of funds, we propose to make a determination of incompetency for VA purposes. Sure, but that doesn't rule out that the veteran could come back and say that the doctor may be saying one thing, but for example... Was that when the 60 day window starts, when that... The 60 day window starts from the date of the proposed incompetency, which was the September 26th. So there's 60 days. Now... And where does the 60 days, is there a regulation or rule that lays the 60 days out? Just tell me the number of it so I know. I think it's 38 CFR 3.53, but... I think it's 353E. Yeah, 38 CFR 3.53D, or E, due process, it's labeled. Okay, so there's a 60 day window after this, and that would have put us to when? That would put you to November 26th, or around that time, 2006. So then January 17th was the final determination of incompetency, so you have a little less than two months. It was January... January 17th, 2001, isn't it? At 2101, isn't it January 8th? January 8th, I think, was the rating decision, but I believe that the actual determination was on the 17th. Oh, is the document on 2102 not a continuation of the document on 2101? It is. It's a combined document. So that document is dated January 8th. Correct, but I believe that's... If you look at 2099, that is when it was issued, and that's dated January 17th. So it's including the rating decision. It says, we have enclosed a copy of our rating decision for your review. So this is when the veteran is being notified of the determination of incompetency. So why? Why from November 26th through January 8th, when you've got a proposed incompetency, nobody disputes it, because the 60 days have passed. It was actually proposed in September. The 60 days have passed. I mean, heck, the veteran himself was submitting numerous pieces of paperwork to the VA saying, please let my son take care of my affairs. I'm sick and stuff. Why then didn't the agency do anything from November 26th until January 17th? Well, I can't really explain that, Your Honor. There's nothing in the record that would explain what exactly is going on there. One possible explanation is that the 60 days runs. I mean, if somebody would come back 10 days after the 60-day period, I mean, that would be information that would be considered. So the 60-day period is not 60 days, it's 70 days because people might not comply with the 60 days, so you wait longer? Well, that's not what I'm saying. What I'm saying is that... It sounded exactly like what you were saying. Well, there's a 60-day period, but the regulation, I don't believe, says on the 61st day they have to issue the document they were just looking for. We can't explain it, but we can't explain that delay of approximately six weeks, we call it. They're saying that that, in part, amounts to a due process violation of the veteran because he was not able to receive the disbursement of the funds. Forget about the $600,000, I don't even understand that claim. But at least you all adjudicated him, as of September 2006, to be entitled to an increased rating, and that rating was retroactive to February. But you weren't giving him the money. That's correct, Your Honor. Why weren't you giving him the money? You adjudicated him entitled to it. Why wasn't he getting it? Well, the explanation was that they hadn't gone through the fiduciary appointment process, and then once the final competence... What does that mean? Wait, wait. Hold on. Explain to me. Why do they have to go... I don't understand. He has not been adjudicated incompetent, right? You're telling me that he had not been adjudicated incompetent, but there's an allegation of proposed incompetence. So, if I'm a veteran, and I'm living on these meager, I'm subsiding on these meager disability benefits, I'm a disabled veteran, someone has alleged that I'm incompetent. I can't get my benefits that you've adjudicated me necessary for life. You found that he needs these benefits to survive. Someone has alleged I'm incompetent, but I can't collect my benefits because the incompetency hasn't been adjudicated. I don't understand. Well, Your Honor, I mean, that's part of the statutory scheme, and we think that Youngman specifically covers this situation. That's part of the statutory scheme. Where does the statutory scheme say that you withhold it until he's adjudicated incompetent? Well, what I was referring to was our standing argument in terms of the only... I'm not interested in your standing argument right now. I want to know why he wasn't getting his benefits. Well, the explanation from the VA and from the board was that a final determination of incompetency had not been issued. So wait, they're tolling. They're not giving him his benefits. I assume this is some sort of paternalistic explanation, right? He's been proposed incompetent, so we don't want to give him money. We don't want to hand the money over to someone who's incompetent because then if he does something bad with the money, we should have known, right? Sure, it is for... That's the logic behind it. The regulations are for the protection of the veteran. But here's my favorite part. You were continuing to give him the original benefits during this time. So wait, we've got a proposal of incompetency. The guy had been getting a 10% disability rating. You're sending him that money. You've now adjudicated him entitled to a higher disability rating. So the only thing you're withholding from him is the difference between the 10% he was originally getting and the higher amount that you've adjudicated he's entitled to and necessary for his survival. How do you explain that? How can any logic justify he's potentially incompetent so we can't give him money? So we'll just give him half the money, but not all the money. Well, I... How can any degree of logic justify that? Well, it is certainly difficult to explain, Your Honor. I mean, I would say I think at that point in time, they were focusing on the change, that difference as in terms of the new money that would be coming in. Potentially, I guess the VA should have probably withheld all funds to the veteran. None of the money necessary to allow him to survive, pay his bills, get food. It all should have stopped at the minute there was a proposal of incompetency. Well, that would be the natural sort of implication of that. But again, that didn't happen... And it wouldn't move just a tiny bit faster on this fiduciary thing given all of that? So you're saying what they should have done is not given him any money. They, in fact, gave him some money. Wouldn't that suggest then there's a real problem with not appointing a fiduciary from September until January? Because under your logic, he shouldn't have gotten any of his money. That's the logical... So you've got a disabled veteran who can't survive absent this money, which is what the rating decision decided. And your suggestion is it was okay for the VA to give him no money from September till January. How's the guy going to eat? What, I mean, cat food? Well, Your Honor, that didn't happen in this case. No, you're right. So you gave him half the money, but not the rest of the money. Correct. Because he's potentially incompetent. Well, because the VA received information that he was potentially not able to manage his affairs. And these regulations are for the protection of the veteran. But I still don't see any... What regulation... I just didn't hear an answer to my earlier question is what is the regulation or statutory provision that allows the VA to withhold money in the circumstance where there's been some proposal that the veteran's incompetent? Well, I believe it was... The regulation at issue was 30 CFR 3.353. Where does it say that they can withhold any of the funds that are due until the time that there is a decision on incompetency? Well, I'm not sure if it's in B2 where it says where the beneficiary is rated incompetent, the veteran service center manager will develop information under that section. I don't see any other language within that regulation. So this would say when the veteran is rated incompetent. Just out of curiosity, when did that happen according to you? In the September thing that proposed his incompetency or did it happen in the rating decision that according to you determined his incompetency? I believe it would have to be the final rating. So then how did they withhold from September until January? This reg wouldn't support them doing that. Even if this reg supported them doing it once they finally determined him incompetent. It doesn't support them doing it before then. Do you believe this is part of his due process challenge? Well, as to the due process challenge, in order to demonstrate a due process violation, you have to have a property interest. And as far as Mr. Heil's son goes, we think that the statutory framework for an adult child is clear that he cannot recover. And we think that Youngman and the Richards v. West case that Youngman cited to, which goes through due process, is clear on that. That when a veteran dies, his entitlement to the benefits is extinguished. Now, there are certain individuals, certain specified individuals, who can receive those monies. He's already acknowledged he's not one of those. Correct. But as to the veteran, at the death of the veteran, there's no entitlement to the benefits. And due process only extends as far as the statutory entitlement. Now, you say that, but that's the part I'm not certain about. I believe you're absolutely right on accrued benefits in general. But I didn't find any cases suggesting that due process claims likewise go up in smoke at the time of a veteran's death. Are you familiar with any that do that? Well, I think that's... Because due process is really unique, right? The due process, hey, I get to look at that question. I don't get to do that for anything else. So due process has a lot of unique attributes here at the Federal Circuit. So what, are you sure that those due process claims likewise evaporate at a veteran's death? That there's a due process, especially over his end-of-life benefits and everything? Sure. Well, that was an argument on reply that Mr. Hiles pointed out. One of the cases that we relied upon young men, young men's sites to Richards v. West, and I'll give you the site on that, 161 F3D 719. In that case, it goes through at 723. It discusses the fact that there was a due process claim there. And that was the brother, the heir who was a brother trying to get it. And the court stated that because a veteran's claim to disability compensation under Chapter 11 of Title 38 is terminated by his or her death, a veteran, and therefore a veteran's estate, cannot have a protected property interest arising from existing rules or understandings in such compensation. So we feel that the young men case, which was the primary case we relied upon, cited and mentioned that case, relied upon it heavily. And so we do think that there is no protected property interest in this case. So is this true? I mean, I know what the statute says about accrued benefits. Suppose in this case, the facts were that you ruled him incompetent in September of 2001 and failed to appoint a fiduciary until 2006. You know, something really outrageous, an outrageous set of facts. And during that time, he was entitled to benefits, but you were withholding them under 353B, as we discussed. And you failed to appoint this fiduciary, and then he died. You know, what happens? Really, nobody gets those benefits? You're talking about a five-year period. Within that five-year period, presumably there would be challenges that these benefits had been awarded. There could be a writ of mandamus that they'd been awarded and not paid. This was not a five-year period. You know, we were looking prior at the length of time here. I mean, in general, delays in these VA cases are not often determined to be due process violations in and of themselves. And it's often a year's period. Here we're talking about a matter of six weeks. Do you agree that if he had been denied fiduciary status, Mr. Marshall Heil, the son, had been denied status as his father's fiduciary, that that would be something that he could appeal and the court below would have jurisdiction over? Well, he, at the time... Does that claim survive the veteran's death, I guess, is the question.  Because he would not be able to recover any... We're still under a situation where there's no standing because he's still not able to recover any money. So not even a fiduciary can recover money after the veteran died that was owed to the veteran? Well, that's the Youngman case. In the Youngman case, there was actually a fiduciary appointed, and they were trying to recover the money in that situation. So we're even one step removed from that case. So I'm not sure how... It would be essentially a standalone due process claim in the absence of any sort of veteran disability benefit compensation. And we certainly don't think that Mr. Heil has put forth any precedent for such a claim. And it really is, in terms of standing, it's the claimant's burden to put forth some basis for standing, that there's some sort of injury in terms of veterans' benefits that have been suffered by Mr. Heil. Okay. Thank you, Mr. Yale. We have a few minutes for battle time. You can see my frustration over how this veteran and his family were handled by the VA. But I'm very much afraid that he's right on the legal issue and that despite really poor behavior by the VA, that the son is not entitled to inherit accrued benefits under the statute, so he has no standing, whether he was the fiduciary or not. So how do you get over that? Because I feel like, despite my government not having treated this veteran and his family very well, nonetheless, he has a technical legal argument and I am, as a judge, bound to follow the law. So tell me, how is it that there is standing in this case for anyone to receive these benefits? So first I would say that we don't think it's barred by 5121 because the due process claim stands independent of a claim for accrued benefits under 5121. We think it is an open question whether the estate can step into the shoes of the veteran. We've not found a case particularly, or that directly addresses this issue. The government brings up the Richards case. The Richards case is different because the Richards case, the heir there was trying to step into the shoes of the veteran to pursue a disability claim that had never been awarded. Here you actually have an award. This court said in Cushman that veterans have a due process right. It's a property right that they have in their benefits and it's vested, and so the open question in our mind, which we think is potentially an issue of first impression, is whether the heirs in that situation, when it's been awarded and not paid, can then step into the shoes where you have a due process violation. We think there's a good reason for it because... And you recognize that that would be distinct from all your other claims. For example, I understand that Mr. Hiles, the appellant, wanted to challenge the September decision because he thought, and his dad thought, that he should be entitled to a higher rating and he realized due process would cover none of that, right? We understand that. We haven't raised that on appeal. The appellant was pro se below and I know he raised a number of arguments. We've only addressed this issue on appeal. We've narrowed it to the singular issue of the due process claim relative to that September decision. The awards benefited, or the benefits awarded through that decision, so it would be limited in that way. Okay. Thank you, Selphie. The case is taken under submission. I thank both of their counsel for their excellent arguments today.